Filed 9/13/13  P. v. MacDougall CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062461 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD236710) |
| KYLE ROBERTSON MACDOUGALL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Seth Friedman and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Kyle Robertson MacDougall of attempting to rape an unconscious person, attempting to rape an intoxicated person and assault with intent to rape.  The court

sentenced MacDougall to three years formal probation, including a term of 365 days in county jail. He appeals, contending the trial court erred when it (1) admitted his out of court statements and (2) excluded certain photographs of the victim. He asserts that the cumulative effect of these errors deprived him of due process. He also claims the trial court erred when imposing the restitution fines. We reject his arguments and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

MacDougall and Rodolfo M. were Marines stationed at Marine Corps Air Station Miramar in San Diego. Rodolfo lived with his girlfriend, Stephanie S., in a one-bedroom apartment near the base. On the evening of August 25, 2011, Rodolfo, Stephanie, and Jose Guzman walked to a bar from Rodolfo and Stephanie's apartment. At the bar, they were joined by MacDougall and some other people. Stephanie said hello to MacDougall, but did not otherwise have any conversation with him.

Stephanie and Guzman became very intoxicated. When Rodolfo, Stephanie, and Guzman decided to leave the bar, Rodolfo asked MacDougall how he was going to get home (to the Marine base). MacDougall replied that he was going to walk. Rodolfoasked MacDougall if he wanted to stay at his apartment because it was not safe for MacDougall to walk to the base entrance. Rodolfo also asked Stephanie if MacDougall could stay at their apartment and she agreed. Rodolfo, Stephanie, Guzman, and MacDougall then walked back to the apartment.

After arriving at the apartment, Stephanie vomited several times in the bathroom. Rodolfo took off Stephanie's clothes and put her in the bathtub with cold water to try and

2

sober her up. After helping Stephanie out of the bathtub, Rodolfo put her on an air mattress on the bedroom floor and covered her naked body with a blanket. Rodolfo then put blankets over MacDougall and Guzman who were sleeping in the living room. Rodolfo lay near Stephanie and fell asleep.

Rodolfo woke up to the sound of heavy breathing. He saw Stephanie lying on her back with her arms at her sides and her legs spread apart. MacDougall was between Stephanie's legs with his face by her breasts. MacDougall was thrusting his hips into Stephanie's crotch, but Stephanie was not moving or reacting at all. Rodolfo yelled at MacDougall to get off Stephanie. When MacDougall got up, Rodolfo saw that MacDougall had an erect penis. Rodolfo yelled at MacDougall and had him leave.

Rodolfo shook Stephanie awake, but she fell back asleep. After Rodolfo slapped Stephanie awake, she asked what was going on. Stephanie cried when Rodolfo explained that MacDougall was having sex with her. Stephanie dialed 911, but she hung up after Rodolfo told her it was probably not a good idea to call the police yet because he wanted to be sure of what he saw before he ruined someone's life. When the 911 dispatcher called back, Stephanie said that everything was okay. Stephanie was still intoxicated and fell back asleep.

The following morning, Rodolfo and Stephanie discussed whether he should report the incident and whether they should call the police. Rodolfo said he would support whatever decision she made. Rodolfo went to work and eventually told Sergeant Thomas Dailey what had happened. Someone called MacDougall over and Rodolfo angrily confronted him.

3

After Rodolfo challenged MacDougall to tell Sergeant Dailey what had happened, MacDougall replied he had sex with Rodolfo's girlfriend and she was passed out. Sergeant Dailey asked MacDougall what he expected to happen when he came to work, and MacDougall replied, "[G]et hit." Sergeant Dailey recalled that Rodolfo then hit MacDougall two times on the cheek until he told Rodolfo to stop.

After hearing that Rodolfo had reported the incident, Stephanie called 911 and relayed that she believed she had been raped. A physical examination of Stephanie revealed areas of redness on her neck and breast. Stephanie's vaginal area had a dried white substance present. Stephanie was quiet and tearful during the examination. DNA swabs were taken from Stephanie's mouth, vaginal area, breasts, and neck. MacDougall's DNA was found on Stephanie's right breast. A test done on Stephanie's vaginal area revealed some injury.

A San Diego police detective later spoke with MacDougall. MacDougall stated that he did not remember what happened at the apartment, but doubted his DNA would be in Stephanie. MacDougall said he knew it was not right to have sex with an unconscious person, but had no memory of having sex with Stephanie. MacDougall expressed remorse, but did not know whether he had sex with Stephanie and did not think he had raped her. MacDougall claimed he was unable to get an erection when he is "'blackout drunk.'"

DISCUSSION

I. *General Legal Principles*

Generally, all relevant evidence is admissible. (*People v. Champion* (1995) 9 Cal.4th 879, 922.) Relevant evidence is that which has any tendency in reason to prove

4

or disprove any disputed fact material to the outcome of the case. (Evid. Code, § 210; undesignated statutory references are to this code.) A trial court has broad discretion in determining the relevance of evidence, but lacks discretion to admit irrelevant evidence. (*People v. Hamilton* (2009) 45 Cal.4th 863, 940.) Nonetheless, even relevant evidence may be excluded if the trial court finds that its probative value is substantially outweighed by its prejudicial effect. (*People v. Champion*, *supra*, at p. 922; § 352.)

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196–197.) "It is . . . well settled that the erroneous admission or exclusion of evidence does not require reversal except where the error or errors caused a miscarriage of justice. [Citation.] "A 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." [Citations.]' [Citations.]" (*People v. Fields* (2009) 175 Cal.App.4th 1001, 1018.)

II. *Admission of MacDougall's Statements to Rodolfo*

A. Background

MacDougall moved in limine to exclude the statements he made in front of Rodolfo and Sergeant Dailey, claiming they were the result of coercion and taken in violation of Article 31 of the Uniform Code of Military Justice. The trial court held a section 402 hearing to determine the voluntariness of MacDougall's statements, with the court hearing testimony from MacDougall, Rodolfo and Sergeant Dailey.

5

MacDougall testified that after he went outside with Rodolfo, that Rodolfo pushed him up against a wall and yelled at him for about 20 to 25 minutes. During that time period, Rodolfo threatened to kill him and MacDougall believed that Rodolfo, who had a black belt in the martial arts, would kill him. MacDougall admitted having sex with Stephanie to temporarily defuse the situation. After he made this admission, Sergeant Dailey asked him what he thought would happen and then Rodolfo hit him several times until Sergeant Dailey separated the men. MacDougall claimed that he answered Rodolfo's questions because he was afraid and because Sergeant Dailey outranked him.

Rodolfo and Sergeant Dailey's statements regarding the confrontation were fairly similar to MacDougall's. Sergeant Dailey, however, testified that he stepped outside about three to five minutes after Rodolfo and MacDougall had gone outside. Sergeant Dailey did not hear Rodolfo threaten to kill MacDougall and claimed that MacDougall did not appear to be afraid.

Based on the evidence and the totality of the circumstances, the trial court concluded that MacDougall's statements during the "highly charged" confrontation were voluntary. It specifically found that Rodolfo's threat of violence and Sergeant Dailey's rank did not render the statements involuntary.

B. Analysis

MacDougall claims the evidence did not support the trial court's finding that his statements were voluntary. He asserts that his admissions to Rodolfo and Sergeant Dailey were involuntary because they were the result of threats, coercion or violence. He contends a due process violation occurred because Rodolfo and Sergeant Dailey were state

6

actors or agents. He claims that even if Rodolfo and Sergeant Dailey acted as private parties, that his coerced statements should have been excluded as involuntary and unreliable.

MacDougall's arguments rely on his claim that the trial court erred in finding that his statements were voluntary and not the product of threats, coercion or violence. As a general matter, we accept the trial court's resolution of factual issues when it is supported by substantial evidence, and independently review its legal conclusions. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 284 [alleged violation under *Miranda v. Arizona* (1966) 384 U.S. 436].) Our high court in *People v. Berve* (1958) 51 Cal.2d 286 (*Berve*) stated that a reviewing court has a "duty to examine the uncontradicted facts to determine independently whether the trial court's conclusion of voluntariness was properly found." (*Id.* at p. 290.) At first blush, *Berve* appears to set forth a different rule. Critically, however, the evidence in *Berve* was "uncontradicted" (*ibid.*), which is not the case here.

After considering the evidence and the circumstances, the trial court found that MacDougall's statements were voluntary and that military rank was not used to force his response. Our review of the testimony of these witnesses shows substantial evidence supported these findings. Namely, Sergeant Dailey did not hear Rodolfo threaten to kill MacDougall. Even assuming Rodolfo had threatened to kill MacDougall, Sergeant Dailey testified that MacDougall did not appear to be afraid. Other than MacDougall's testimony that he answered Rodolfo's question "to a degree" because Sergeant Dailey outranked him, there is absolutely no evidence that Sergeant Dailey used his position to force MacDougall

7

to answer Rodolfo's questions. Moreover, the trial court found Rodolfo and Sergeant Dailey's testimony to be credible. On appeal, we do not reweigh evidence or reevaluate a witness's credibility. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

Because the evidence supported the trial court's findings regarding the voluntariness of MacDougall's statements, we reject his argument that the admission of these statements resulted in a due process violation. Even assuming the trial court erred in admitting MacDougall's statement, that he "had sex" with Stephanie, MacDougall has not shown that the admission of this evidence prejudiced him whether we review the issue under *People v. Watson* (1956) 46 Cal.2d 818, 836 [whether it is reasonably probable that a result more favorable to the appellant would result in the absence of the error] or under *Chapman v. California* (1967) 386 U.S. 18, 24 [whether the error was harmless beyond a reasonable doubt].

Significantly, the jury found MacDougall not guilty of raping an intoxicated person and not guilty of raping an unconscious person. Thus, the jury clearly disbelieved MacDougall's admission to Rodolfo that he "had sex" with Stephanie. Rather, the jury found MacDougall guilty of attempting to rape an intoxicated person, attempting to rape an unconscious person and assault with intent to commit rape. Rodolfo's testimony regarding his observations of MacDougall's actions and Stephanie's condition combined with the physical evidence found on Stephanie, overwhelmingly supported these findings. Thus, the assumed error was harmless.

8

## III. *Exclusion of Photographs*

A.  Background

MacDougall moved in limine to admit three photographs taken from Stephanie's Facebook page about a month after the incident.  The pictures depicted Stephanie, Rodolfo and others at a party where there was drinking going on.  One photograph showed Stephanie in a group hug where she and another woman were grabbing the breast of a third woman.  Another showed Stephanie "grinding" her pelvis against Rodolfo's buttocks.  The last photograph showed Stephanie "grinding" her pelvis against another female.

MacDougall argued that the photographs were relevant to impeach Stephanie regarding the alleged emotional distress she suffered.  He also argued that the photographs revealed Stephanie's propensity to rub herself against people in a party setting and could explain why his DNA was found on Stephanie's breast.

After the prosecutor and the court viewed the photographs, the court allowed MacDougall to introduce the photograph depicting Stephanie grinding against the buttocks of another woman as it related to Stephanie's credibility.  It excluded the other photographs as highly prejudicial, not relevant to the night in question, and potentially confusing to the jury.  It also found that these photographs did not specifically relate to credibility and raised issues associated with sexual promiscuity that is prohibited.

During trial, Rodolfo testified that Stephanie would get "clingy" with him when intoxicated.  When shown the one admitted photograph, Rodolfo testified that Stephanie was the designated driver on that evening and was not drinking.  He also agreed that Stephanie was "clinging" on the woman in front of her, but explained that the woman was

9

Stephanie's best friend who was really drunk and that Stephanie had just been holding her up before the picture was taken.

MacDougall asked the court to reconsider the exclusion of the two smaller photographs because the photo showing Stephanie grabbing the breast of another female should be admitted as impeachment because she was "clinging" to the female in that picture. Rodolfo testified she was not intoxicated when the photo was taken and that she was only clingy when she was intoxicated. The court rejected the argument and confirmed its prior ruling to exclude the two photographs.

B. Analysis

MacDougall contends the trial court committed prejudicial error by excluding the two photographs because they were inconsistent with Stephanie's claim that she had been the victim of an emotionally traumatic sexual assault and they would have impeached Rodolfo's testimony that Stephanie became "clingy" only when she was intoxicated. We conclude the trial court did not abuse its discretion in excluding the photographs under section 352.

The photographs had minimal probative value to undermine Stephanie's credibility about the incident because they were taken weeks after the incident with MacDougall. This slight probative value was far outweighed by the prejudice the photographs would have caused to confuse the issues for the jurors. Contrary to MacDougall's suggestion, exclusion of the two photographs did not interfere with his constitutional rights to present a defense or confront the witnesses against him. MacDougall had a full and complete opportunity to impeach Stephanie's credibility about the emotional trauma she suffered

10

based on the photograph that the court admitted. In any event, the erroneous exclusion of evidence having only slight probative value or on a minor or subsidiary issue does not violate a defendant's federal constitutional rights. (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.) We deem the emotional trauma suffered by Stephanie to be a secondary issue as it is not an element of any of the charged crimes.

MacDougall's argument that the photographs would have impeached Rodolfo's testimony that Stephanie became "clingy" when she was intoxicated misstates Rodolfo's testimony. Rodolfo testified at trial that Stephanie got "clingy" *with him* when intoxicated. He never testified that this only occurred when Stephanie was intoxicated, nor did he claim that Stephanie never became "clingy" with others while not intoxicated. Moreover, Rodolfo never defined what the term "clingy" meant. We agree with the Attorney General that the impeachment value of the photograph showing Stephanie in a group hug with four other people where she and another woman are touching the breast of another woman was minimal. (*People v. Ayala* (2000) 23 Cal.4th 225, 301 ["'[T]he latitude section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.'"].)

### IV. *Cumulative Error*

MacDougall argues that the cumulative effect of the alleged errors deprived him of his due process right to a fair trial. Because we have rejected his individual arguments on the merits, we conclude the cumulative error doctrine is inapplicable. (*People v. Watkins* (2012) 55 Cal.4th 999, 1036.)

## V. *Restitution Fines*

### A. Background

MacDougall committed the offenses in August 2011. At sentencing, the trial court stated that the restitution fine (Pen. Code, § 1202.4, subd. (b)) and the probation revocation fine (Pen. Code, § 1202.44) would be $240 each. The probation officer then noted that the $240 amount only applied to offenses committed after January 1, 2012. Accordingly, the trial court changed the fines to $200 each. The order granting probation and the court minutes listed the fine amounts as $200.

### B. Analysis

MacDougall contends that the ex post facto clause requires that the restitution fine and the parole revocation fine be reduced to $200 each because he committed the current offenses before January 1, 2012, when the amount of the fines increased from $200 to $240. Here, there is no ex post facto violation as the trial court properly imposed $200 fine amounts.

### DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

12